# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CORAL GROUP, INC. and<br>SENTIS GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SHELL OIL COMPANY, et al.,<br><br>Defendants. | No. 05-633-CV-W-DW |

## ORDER OF DISMISSAL

While the sanction of dismissal should be sparingly employed, Plaintiffs' disregard of the rules of discovery and this Court's orders, among the most egregious that this Court has seen in almost twenty years on the federal bench, merits the imposition of such a sanction. For the foregoing reasons, Plaintiffs' case is hereby DISMISSED WITH PREJUDICE.

**A.    The Lawsuit.**

1.1     On or about July 15, 2005, Coral Group, Inc. and Sentis Group, Inc. ("Plaintiffs") filed suit against Shell Oil Company and Equilon Enterprises LLC d/b/a Shell Oil Products US ("Defendants"). See Complaint.

1.2     On or about May 31, 2006, Plaintiffs filed their First Amended Complaint against Defendants. In their First Amended Complaint, Plaintiffs seek damages for violation of the Petroleum Marketing Practices Act, violation of Missouri franchise law, fraud in the inducement, fraud by silence, fraud in the future promise, negligent misrepresentation, breach of contract, tortious breach of contract, breach of duty of good faith and fair dealing, and breach of fiduciary duty. See First Amended Complaint.

1.3     Throughout the discovery in this case, the parties frequently sought the Court's intervention in discovery matters. The number of discovery conferences in this case totaled approximately fifteen, most of which resulted from Plaintiffs' aforementioned conduct. Some of these interventions resulted in the entry of one or more orders discussed herein and which Plaintiffs have violated.

**B.     Plaintiffs' Willful Pattern of Discovery Abuses.**

**1.      Chris Walls' Role and Documents**

1.4     In March 2006, Plaintiffs provided Defendants with a privilege log consisting of 58 documents reviewed and/or generated by Chris Walls. Those 58 documents contained approximately 221 pages, were bates-labeled "PRIV" and were dated prior to March 2006. See Plaintiffs' March 2006 Privilege Log, attached as Exhibit A to Defendants' Motion for Sanctions.

1.5     On May 1, 2006, Plaintiffs told the Court that Chris Walls is a current employee of Plaintiffs. See Letter from Jeffrey King to Judge Whipple, attached as Exhibit P to Defendants' Motion for Sanctions.

1.6     On May 9, 2006, Plaintiffs relied upon the "retained expert" provisions of the Protective Order governing documents produced in this case to obtain an Order from this Court granting Chris Walls access to Shell's "highly confidential" documents. See Plaintiffs' Motion to Grant Their Expert, Chris Walls, Access to Documents Designated as Highly Confidential.

1.7     On May 10, 2006, Chris Walls corresponded with Plaintiffs' attorneys, resulting in revisions to Walls' resume changing his employment from his consulting group, TQM Group, Inc., to a consultant for Plaintiffs, to a "business and financial manager" for Plaintiffs. See Plaintiffs' September 29, 2006 production, CS100930-CS100934, CS100942-943, and CS100945-947, attached as Exhibit E to Defendants' Motion for Sanctions.

1.8 On June 1, 2006, Plaintiffs tendered Chris Walls as an expert and Mr. Walls submitted a retained expert report under Federal Rule of Civil Procedure 26. Plaintiffs also sought access to Shell's "highly confidential" documents. The resume attached with Mr. Walls' report identified him as a "business and financial manager" for Plaintiffs. See Plaintiffs' Rule 26(A)(2) Expert Disclosures, attached as Exhibit B to Defendants' Motion for Sanctions.

1.9 Plaintiffs designated Chris Walls as an expert on the MSO model, fuel-related expenses and site downtime as a result of maintenance and/or repairs. See Excerpts from Chris Walls' Expert Report, attached as Exhibit C to Defendants' Motion for Sanctions.

1.10 On June 5, 2006, Defendants sent a letter to Plaintiffs requesting production of Chris Walls' documents pursuant to Federal Rule of Civil Procedure 26. See Letter from Abby Risner to Rebecca King, attached as Exhibit 15 to Defendants' Opposition to Petition for Writ of Mandamus and Motion for Stay.

1.11 On June 16, 2006, the Court ordered: "For each of Plaintiffs' experts, Plaintiffs are ordered to produce the information considered by and/or relied upon in forming that expert's opinion." See Court Order dated June 16, 2006, ¶ 7.

1.12 On July 6, 2006, Plaintiffs told the Court that Walls is a "non-retained in-house expert." See Transcript of July 6, 2006 Hearing, p. 88, attached as Exhibit U to Defendants' Motion for Sanctions.

1.13 On July 13, 2006, the Court ordered: "Plaintiffs are ordered to produce any reports or analysis produced by Chris Walls from February 5, 2005, as referred to by Chris Walls in his deposition." See Court Order dated July 13, 2006, ¶ 5.

1.14 On August 2, 2006, despite their prior expert disclosures and designations, Plaintiffs told the Court that Walls is a "non-retained expert." See Letter from Rebecca King to Abby Risner,

attached as Exhibit S to Defendants' Motion for Sanctions.

1.15　On August 17, 2006, the Court ordered: "Plaintiffs are ordered to produce the document created by Mr. Walls currently being withheld on grounds of privilege. This Court finds that any privilege was destroyed due to Mr. Walls' reliance on said document." See Court Order dated August 17, 2006, ¶ 2.

1.16　On August 31, 2006, Defendants sent Plaintiffs a letter, at Plaintiffs' request, identifying the 58 Chris Walls documents on their privilege log to be produced. See August 31, 2006 letter from Abby Risner to Jeff King, attached as Exhibit D to Defendants' Motion for Sanctions.

1.17　Plaintiffs referenced and attached Defendants' August 31, 2006 letter in their Writ Petition. See Plaintiffs' Emergency Petition for Writ of Mandamus, Exhibit P.

1.18　Despite the Court's numerous prior orders, Plaintiffs still refused to produce the documents relating to Chris Walls. After another telephone conference, on September 8, 2006, the Court issued a fourth order: "Plaintiffs are ordered to produce any and all document or analysis developed by Chris Walls relating to this litigation, regardless of whether the document is claimed as privileged or if Chris Walls relied upon said document. The documents must be produced by noon on Monday, September 11, 2007 [sic]. If these documents are not produced, Plaintiffs will not be permitted to present the testimony of Mr. Walls at trial." See Court Order dated September 8, 2006, ¶

1.19　Plaintiffs never sought clarification from this Court on any of its orders.

1.20　On September 11, 2006, Plaintiffs filed their Petition for Writ of Mandamus in the Eighth Circuit ("Writ Petition") challenging the September 8 Order, and represented to the Eighth Circuit that the September 8 Order was "clear error and clearly abused its discretion by ordering

production of Mr. Walls' communications with Petitioner's counsel." See Plaintiffs' Emergency Petition for Writ of Mandamus, p. 30. Plaintiffs also stated that Walls is a "longtime business consultant." Defendants argued that Plaintiffs' purpose was to avoid producing Chris Walls' documents to Defendants. See Plaintiffs' Emergency Petition for Writ of Mandamus, p. 14.

 1.21 On September 29, 2006, Plaintiffs produced to Defendants 43 documents, containing approximately 266 pages and bearing bates-labels of "CS." None of the 43 documents were bates-labeled "PRIV" as identified on the March privilege log and that were the subject of this Court's orders. Twenty-three (23) of the documents contained dates after March 2006. Defendants' efforts to match these 43 documents with the 58 documents on Plaintiffs' March 2006 privilege log resulted in only one possible match. See Plaintiffs' September 29, 2006 production, attached as Exhibit E to Defendants' Motion for Sanctions.

 1.22 Plaintiffs also disclosed for the first time that they were withholding more than 550 Chris Walls documents. See Plaintiffs' Motion for *In Camera* Review and Protective Order, Exhibit C. Approximately 400 of the documents disclosed on September 29 are dated prior to the March 2006 privilege log, but they were not contained in the 58 documents on the March privilege log. See Plaintiffs' Motion for *In Camera* Review and Protective Order, Exhibit C.

 1.23 On October 3, 2006, Plaintiffs represented to the Court that "[i]n its production of documents to Shell last Friday [September 29th], Plaintiffs produced all documents responsive to this Court's Order and related to Chris Walls' expert report." See Plaintiffs' Suggestions in Support of Plaintiffs' Motion for *In Camera* Review and Protective Order, p. 2.

 1.24 On November 7, 2006, Plaintiffs told this Court that Walls is an employee involved in day-to-day operations. See Plaintiffs' Reply Suggestions in Further Support of Plaintiffs' Motion for *In Camera* Review and Protective Order, p. 8.

1.25     On November 7, 2006, Plaintiffs declared that they had produced all responsive documents to the September 8 Order "to Defendants." See Plaintiffs' Reply Suggestions in Further Support of Plaintiffs' Motion for *In Camera* Review and Protective Order, p. 1 (emphasis added).

1.26     On December 6, 2006, Plaintiffs told this Court that Walls provides "business consulting services" and "functions legally as Plaintiffs' employee."  Plaintiffs' purpose apparently was to avoid producing Chris Walls' documents to Defendants.  See Plaintiffs' Suggestions in Opposition to Defendants' Motion for Sanctions, p. 14.

1.27     On December 6, 2006, Plaintiffs declared that they had produced all documents responsive to the September 8 Order, but "some were simply sent to this Court." See Plaintiffs' Suggestions in Opposition to Defendants' Motion for Sanctions, p. 28.

1.28     On December 15, 2006, this Court held a hearing regarding numerous outstanding discovery motions. Plaintiffs admitted that, despite their earlier representations to the Court and to Defendants,  Plaintiffs had still not produced the 58 Chris Walls' documents on the March 2006 privilege log to Defendants.  See Transcript of December 15, 2006 Hearing, p. 84. Indeed, the 58 documents had been renumbered and and placed on a privilege log amongst the "new" in camera documents. Id. at 28 and 38-41.

**2.     Nick Anton's Role and Documents**

1.29     On or about January 30, 2006, Plaintiff Sentis Group, Inc. submitted an "Alcoholic Beverage License Application/Renewal" to the city of Kansas City, Missouri, signed under oath by Alan Barazi on January 30, 2006, stating "that the answers and information provided in this application are true, correct and complete," identifying Nick Anton as the "managing officer" of Sentis Group, Inc. See Defendants' Motion for Sanctions, Exhibit J.

1.30     On May 10, 2006, Plaintiff Sentis Group, Inc. submitted an "Application for City

License to Sell Intoxicating Liquors" signed by Nick Anton as the "applicant" to the city of Kearney, Missouri, for Sentis Group, Inc. in which Anton "represents that he is in all respects qualified in law to receive such license." See Defendants' Motion for Sanctions, Exhibit J.

1.31   On or about May 10, 2006, Plaintiff Sentis Group, Inc. submitted an "Application for License to Sell Alcoholic Beverages" to the city of Harrisonville, Missouri, identifying Nick Anton as the applicant for Sentis Group, Inc. and identifying him as having a Kansas City, Missouri, residential address. Nick Anton signed the application and stated under oath that "the facts set out in the above application are true." See Defendants' Motion for Sanctions, Exhibit J.

1.32   On May 15, 2006, despite the above statements given under oath, Nick Anton testified that his only current role with Plaintiffs was as an outside accountant. On June 16, 2006, again in complete contradiction to the statements on the license applications, Plaintiffs represented to the Court that Nick Anton is an outside accountant over whom they have no control. See Transcript of June 16, 2006 Teleconference with Court, p. 6, attached as Exhibit T to Defendants' Motion for Sanctions. In so doing, Plaintiffs' sought to avoid the production of documents in Anton's possession and to avoid producing Anton as a witness. See Deposition of Nick Anton dated May 15, 2006, p. 11, attached as Exhibit I to Defendants' Motion for Sanctions.

1.33   On or about June 22, 2006, after having represented to the Court otherwise, Plaintiff Sentis Group, Inc. submitted a "Liquor License Renewal" to the city of Blue Springs, Missouri, for the period July 1, 2006, through June 30, 2007, signed by Alan Barazi and Nick Anton on June 22, 2006, identifying Nick Anton as the "managing agent" of Plaintiff Sentis Group, Inc. and identifying Anton as having a Kansas City, Missouri, address. Alan Barazi and Nick Anton certified that the information in the application was "accurate and complete." See Defendants' Motion for Sanctions, Exhibit J.

1.34     On or about June 29, 2006, Plaintiff Sentis Group, Inc. submitted an "Application to Sell Liquor" to the city of Pleasant Valley, Missouri, for the period of July 1, 2006, to June 30, 2007, signed by Alan Barazi on June 29, 2006, identifying Nick Anton as the "managing officer" of Plaintiff Sentis Group, Inc.  See Defendants' Motion for Sanctions, Exhibit J.

1.35     On June 30, 2006, the Court ordered the parties and Nick Anton to appear for a hearing on July 6, 2006.  See Court's Order dated June 30, 2006.

1.36     On July 6, 2006, Plaintiffs failed to produce Nick Anton in Court. Plaintiffs explained Anton's absence stating that Anton has no "official position or any position except as a hired outside accountant."  Alan Barazi was sitting in the courtroom when his counsel made that statement.  Mr Barazi did nothing to correct either his counsel or this Court's understanding, despite having filled out a form a little over a week before identifying Mr. Anton as the "managing officer."  See Transcript of July 6, 2006 Hearing, p. 4, attached as Exhibit U to Defendants' Motion for Sanctions.

1.37     On August 16, 2006, Alan Barazi himself testified that Nick Anton has no management responsibility and is only an outside accountant.  See Deposition of Alan Barazi dated August 16, 2006, p. 257, attached as Exhibit Z to Defendants' Motion for Sanctions.

**3.     Nick Anton Documents**

1.38     Between March and May 2006, at the direction of Alan Barazi, Nick Anton created documents to produce to Defendants in discovery, including the 2003 and 2004 financial statements and tax returns for Plaintiffs' sister companies, Cortis Management, Inc. and Sencor Management, Inc.  See Deposition of Nick Anton dated May 15, 2006, pp. 71-72, attached as Exhibit I to Defendants' Motion for Sanctions.

1.39     On July 20, 2006, in an attempt by Defendants to clarify which documents had been

produced, Nick Anton represented to Defendants that the payroll journal is a "general term and it is not the title of any particular document." See Letter from Nick Anton to Lathrop & Gage, attached as Exhibit K to Defendants' Motion for Sanctions.

1.40    The tax returns for the sister companies, Cortis and Sencor, and the payroll journal were necessary for Defendants' defense because Plaintiffs claim Defendants misrepresented location expenses to induce Plaintiffs to enter into the MSO Agreements and failed to pay Plaintiffs' fuel-related expenses, including labor, under the Agreements. See First Amended Complaint, ¶¶ 224, 265-272, 279-285.

1.41    On August 17, 2006, this Court ordered: "Plaintiffs are ordered to produce Nick Anton with his computer for a deposition. At said deposition, Mr. Anton shall submit to questioning and review of the relevant financial information stored within." See Court Order dated August 17, 2006, ¶ 1.

1.42    On September 13, 2006, during Nick Anton's deposition, Defendants discovered that the computer software program used by Nick Anton contains a document titled "Payroll Journal." See Exhibit 39 to Defendants' Motion for Sanctions, Exhibit L.

1.43    Nick Anton admitted in his deposition that he only provided Defendants incomprehensible raw financial data of Plaintiffs' companies that Defendants could not interpret unless they owned the same software program as that used by Nick Anton or if Plaintiffs, through Nick Anton, printed the information onto paper. See Deposition of Nick Anton dated September 13, 2006, pp. 290, 294-295, attached as Exhibit L to Defendants' Motion for Sanctions.

1.44    Plaintiffs failed to produce a complete set of financial reports from Nick Anton's computer for Plaintiffs' companies and Plaintiffs' sister companies, Cortis and Sencor. See Defendants' Motion for Sanctions, pp. 24-25.

1.45 On November 14, 2005, Betsy Badger, Defendants' counsel, received a phone call from Nick Anton's counsel. Mr Anton's counsel informed Defendants' counsel that Plaintiffs offered to compensate Nick Anton if he would conceal evidence from Shell. See Declaration of Elizabeth D. Badger, attached as Exhibit M to Defendants' Motion for Sanctions. Mr. Anton's counsel stated that Mr Anton was interested in being compensated since Plaintiffs were offering him remuneration. Id. The Court finds Ms. Badger's statements credible due to Ms. Badger's almost twenty-years of respected practice in front of this Court.

### 4. Plaintiffs' Email Production

1.46 Plaintiffs have never produced a critical email and attachment in this litigation, which is an August 7, 2003 email from Alan Barazi to Rhonda Dunn. See Defendants' Motion for Sanctions, p. 27.

1.47 At the July 6, 2006 hearing, Plaintiffs told the Court that "[The August 7, 2003 email and attachment] was sent from an Internet café." Alan Barazi was sitting in the courtroom when his counsel made that statement. See Transcript of July 6, 2006 Hearing, p. 121, attached as Exhibit 11 to Defendants' Reply Suggestions in Support of their Motion for Sanctions.

1.48 On August 17, 2006, Alan Barazi testified at his deposition that he could not recall where he was when he sent the August 7, 2003 email and attachment and could not verify that he was at an internet café. See Deposition of Alan Barazi dated August 17, 2006, pp. 698-700, attached as Exhibit Z to Defendants' Motion for Sanctions.

1.49 Defendants pursued discovery based on Plaintiffs' statement on July 6 that the email was sent from an internet café. See Defendants' Motion for Sanctions, p. 28. However, Defendants could not pursue further discovery or investigate this critical document because Alan Barazi said on August 17 that he does not know where he was when he sent the email to Rhonda Dunn. See

Deposition of Alan Barazi dated August 17, 2006, pp. 698-700, attached as Exhibit Z to Defendants' Motion for Sanctions.

### 5. Failure to Produce Tape Recording

1.50  On August 17, 2006, Alan Barazi testified that he had tape recorded *only two* conversations with Shell, both of which had previously been produced to Defendants. See Deposition of Alan Barazi dated August 17, 2006, pp. 799-801, attached as Exhibit 5 to Defendants' Motion to Strike.

1.51  On November 22, 2006, again in contradiction with their earlier assurances, Plaintiffs attached a third tape recording of Alan Barazi's conversations with Shell to their Motion for Partial Summary Judgment, which was never before produced to Defendants. See Plaintiffs' Motion for Partial Summary Judgment on Counts VII, VIII & IX, Exhibit I; Defendants' Motion to Strike.

### C. Analysis

This Court may impose a discovery sanction under Rule 37(b) of the Federal Rules of Civil Procedure and the inherent authority of this Court. Chrysler Corp. v. Carey, 186 F.3d 1016, 1019 (8th Cir. 1999). Rule 37(b) sanctions are proper where there is a finding of (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice. Chrysler, 186 F.3d at 1019. "[W]hen a litigant's conduct abuses the judicial process, the remedy of dismissal is within the inherent powers of the court." Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 941 (8th Cir. 2000); see also Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000) (Dismissal is appropriate when the "failure to comply has been due to ... willfulness, bad faith, or any fault of petitioner. ).

This Court issued four orders compelling the production of the Chris Walls documents: June 16, 2006, July 13, 2006, August 17, 2006, and September 8, 2006. Plaintiffs have admitted that they

failed to produce all 58 Chris Walls documents on their March 2006 privilege log in compliance with this Court's Order dated September 8, 2006. As to the Chris Walls' documents, the documents Plaintiffs produced to Shell on September 29 as being in compliance with this Court's Orders were not the same 58 documents as those on Plaintiffs' March 2006 privilege log: the documents had a different bates label, there was a different number of documents containing a different number of pages, the majority of the documents were dated after Plaintiffs' March 2006 privilege log and Defendants were only able to make one possible match between Plaintiffs' March 2006 privilege log and the documents produced on September 29.

Plaintiffs also violated the Court's June 30, 2006 Order requiring the production of Nick Anton at the July 6, 2006 hearing. Mr. Barazi sat in the courtroom passively listening while his counsel misrepresented Mr. Anton's employment status and their ability to produce Mr. Anton to this Court.

The evidence as to Mr. Barazi's offer to pay Mr. Anton to withhold "unfavorable" documents from discovery leads the Court to believe that the above violations are just the "tip of the iceberg" Chrysler, 186 F.3d at 1020-1022. Plaintiffs clearly made every effort to avoid compliance with the orders of this Court and the rules of discovery.

After hearing argument from the parties and judging the credibility thereof, the Court finds that Plaintiffs wilfully and in bad faith violated this Court's discovery orders. Plaintiffs' claims that they did not understand the four Orders compelling the production of the Chris Walls' documents is not credible and in bad faith. Plaintiffs cannot "maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt." Chaganti & Assoc., P.C. v. Nowotny, No. 05-1101/05-2075, 2006 U.S. App. LEXIS 29714, at *20 n.2 (8th Cir. Dec. 5, 2006) (quoting Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 808 (2nd Cir. 1981)).

Plaintiffs also violated this Court's order to produce Mr. Anton for the July hearing and misrepresented his employment status as an attempt to excuse their violation. Mr. Barazi himself knew that this was a willful violation of the Court's order as he had represented just a week earlier that Mr. Anton was a "managing officer" of Plaintiff Sentis Group, Inc. At no point during the hearing did Mr. Barazi attempt to clarify Mr. Anton's true status. In fact, over a month later, Mr. Barazi continued to claim, in complete contradiction to his numerous applications, that Mr. Anton was not an employee.

Defendants have suffered prejudice from Plaintiffs' conduct. After months of litigation, Defendants, and this Court, have still not had the ability to gain a clear picture of the discovery available and the roles of the parties involved in this case. Defendants ability to conduct discovery and counter Plaintiffs' arguments has been destroyed by Plaintiffs' actions in this case. See Keefer, 238 F.3d at 941.

The imposition of a lesser sanction is unwarranted in this case. Plaintiffs' recitation of the facts, as regards to the existence of documents or the status of parties, has been a moving target. Their repeated attempts to obfuscate and undermine discovery, coupled with Plaintiffs' repeated misrepresentations to this Court and their blatant disregard for the rules of discovery, support the enhanced sanction of dismissal with prejudice. Chrysler Corp., 186 F.3d at 1021("In this case, the district court found that the defendants repeatedly lied during the discovery process, denying the existence of conversations and documents which had in fact occurred and did exist...The defendants' flat denials that conversations had occurred and that documents existed precluded any follow-up discovery and thus denied Chrysler the ability to conduct effective discovery. And, as these statements were made under oath, they are a direct affront to the court.").

This Court also previously attempted lesser sanctions. In the Court's September 8 Order, this

Court cautioned Plaintiffs that their failure to comply would result in Chris Walls being barred from testifying at trial. Despite this fact, Plaintiffs continued to engage in the previously discussed conduct.

For the above reasons, the Court finds that Plaintiffs have clearly demonstrated a ''blatant disregard of the Court's orders and the discovery rules,' and engag[ed] in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." <u>Chrysler Corp. v. Carey</u>, 186 F.3d at 1022, citations omitted. The case is therefore DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date: <u>June 14, 2007</u>                 <u>/s/ Dean Whipple</u>
                                                       Dean Whipple
                                         United States District Judge