IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CORAL GROUP, INC. and | ) | |
| SENTIS GROUP, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:05-CV-0633–DGK |
| | ) | |
| SHELL OIL COMPANY and | ) | |
| EQUILON ENTERPRISES LLC d/b/a | ) | |
| SHELL OIL PRODUCTS US, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AWARDING ATTORNEYS' FEES

This case arises from a high-stakes business dispute between the parties. Plaintiffs Coral Group, Inc. ("Coral") and Sentis Group, Inc. ("Sentis") contracted with Defendants Shell Oil Company ("Shell") and Equilon Enterprises LLC ("Equilon") to operate Defendants' Shell-brand gasoline stations and convenience stores in Missouri and Kansas. Plaintiffs allege Defendants induced them to enter the contracts through misrepresentation and fraud.

Discovery in this case was unusually acrimonious; the case devolved from a business dispute to a litigation street brawl which ended with the Court dismissing Plaintiffs' claims with prejudice as a sanction for Plaintiffs' bad faith failure to preserve evidence. *Coral Group, Inv. v. Shell Oil Co.*, 286 F.R.D. 426, 443 (W.D. Mo. 2012). In the wake of this dismissal, Defendants filed the pending "Motion for Attorneys' Fees and Costs" (Doc. 657).[1]

Defendants seek an award of $3.1 million in attorneys' fees and expenses under a fee-shifting provision in the parties' contract and under the Court's inherent authority as a sanction

---

[1] In ruling on the motion, the Court has carefully considered the arguments raised in Defendants' suggestions in support (Doc. 658), Defendants' supplemental suggestions (Doc. 673), Plaintiffs' opposition (Doc. 674), Plaintiffs' supplemental suggestions (Doc. 679), Defendants' reply (Doc. 684), and Defendants' response to the Court's order requesting additional information (Doc. 686).

for Plaintiffs' misconduct. Defendants also request the Court hold Plaintiffs' principal, non-party Alan Barazi ("Barazi"), personally liable for any award.

Finding that the parties' contract contains a fee-shifting provision, that Defendants are the prevailing party, and that the requested fees and expenses are reasonable, the Court GRANTS Defendants' request. The Court awards Defendants attorneys' fees of $2,340,819.44 and expenses of $762,290.90 for a total award of $3,103,110.34. The Court declines to hold Barazi personally liable.

## Background

A detailed history of this case is set forth in the Eighth Circuit Court of Appeals' decision, *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 892-98 (8th Cir. 2009), and this Court's subsequent order imposing sanctions. *Coral Group*, 286 F.R.D. at 428-32. The following facts are relevant to the Court's decision here.

Plaintiffs' entered into two contracts, called Multi-Site Operator Agreements ("the MSOs" or "the Agreements"), with Defendants. One of the Agreements covers the Missouri locations, the other covers the Kansas locations. The Agreements contained identical attorneys' fees provisions stating that,

> The prevailing party will be entitled to recover from the other party pre-judgment interest, reasonable attorneys' fees and costs and other costs of collection the party incurs in order to secure, defend or protect the rights inuring to the prevailing party under the Agreement or to enforce the terms thereof. In the event of litigation between the parties, both parties hereby waive any claim against the other party to this Agreement for consequential, exemplary, and/or punitive damages.

(Doc. 199-1 at 14; Doc. 199-2 at 14).

Plaintiffs' "First Amended Complaint" ("the Complaint") (Doc. 199) asserts eleven different claims. It alleges violation of the Petroleum Marketing Practices Act ("PMPA") (Count I), violation of Missouri franchise law (Count II), fraud in the inducement (Count IV), fraud by silence (Count V), fraud in the future promise (Count VI), negligent misrepresentation (Count VII), breach of contract (Count VIII), tortious breach of contract (Count IX), breach of duty of good faith and fair dealing (Count X), and breach of fiduciary duty (Count XI). It also seeks injunctive relief for the alleged violation of the PMPA and Missouri franchise law (Count III). The prayer for relief seeks, among other items, "the costs of this action, including reasonable attorneys' fees and expenses" (Doc. 199 at 56).

Defendants' "Partial Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint" ("the Answer"), denies any liability and requests Defendants "be awarded their costs and expenses incurred herein, and for any further relief as this Court deems just and proper" (Doc. 223 at 40). The Answer does not specifically mention attorneys' fees.

## Discussion

I.   **The Court awards Defendants $3,103,110.34 for attorneys' fees and expenses.**

   **A. Defendants were not required to plead their request for attorneys' fees.**

"In a diversity action, state law governs the availability of attorneys' fees where no conflicting federal statute or court rule applies." *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011). Under both Missouri and Kansas law, attorneys' fees are not recoverable from another party except when allowed by contract or statute. *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 657 (Mo. banc 2009); *T.S.I. Holdings, Inc. v. Jenkins*, 924 P.2d 1239, 1254 (Kan. 1996). Where—as here—attorneys' fees are available, federal procedural rules govern how a litigant must request them. *See Karl's, Inc. v. Sunrise Computers, Inc.*, 21 F.3d

230, 232 (8th Cir. 1994) (holding decision whether to conduct a hearing on attorneys' fees award is a matter of procedure governed by federal law).

Plaintiffs argue Defendants waived their ability to recover attorneys' fees under the Agreements by failing to specifically request attorneys' fees in their Answer. Plaintiffs argue attorneys' fees are special damages that must be pled under Federal Rule of Civil Procedure 9(g), and the Answer contains no such request.

Defendants counter that their Answer sufficiently pleads a request for attorneys' fees, but even if it does not, the pending motion is timely because Federal Rule of Civil Procedure 54(d)(2) requires only that a claim for attorneys' fees "be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Since attorneys' fees were not an item of damages to be proven at trial, a post-judgment request is acceptable.

The Court holds Defendants were not required to plead a request for attorneys' fees and expenses in their answer. When the parties have negotiated a fee-shifting provision in their contract attorneys' fees and expenses are not an item of special damages which must be specifically requested in a pleading under Rule 9(g). *Wiley v. Mitchell*, 106 Fed. Appx. 517, 522 (8th Cir. 2004); *Thirty and 141, LP v. Lowe's Home Centers, Inc.*, No. 4:06-CV-01781-SNL, 2008 WL 1995343, at *2 (E.D. Mo. May 6, 2008); *but see Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916 (8th Cir. 1997) ("Attorneys' fees are 'special damages' that parties are required to plead under Rule 9(g) of the Federal Rules of Civil Procedure.").

In *Wiley*, the Eighth Circuit held attorneys' fees do not have to be pled as a special damage when the parties' contract provides for an award of attorneys' fees to the prevailing party. 106 Fed. Appx. at 523 ("Although this circuit has not spoken directly on this issue, we have upheld attorneys' fees sought at the conclusion of a trial and awarded on the basis of Rule

4

54(d) and a contractual provision allowing a prevailing party to recover reasonable attorneys' fees."). Where allowed under a contractual provision, attorneys' fees need not be pled because (1) attorneys' fee are not an unusual type of damages, and (2) by agreeing to the contract provision, a party is given sufficient notice that it cannot be unfairly surprised when presented with the prevailing party's legal bill at the litigation's conclusion. *Thirty and 141, LP*, 2008 WL 1995343 at *2-3.

*National Liberty* is distinguishable from the instant case because in that case the claimant was seeking attorneys' fees as an item of damages under a referral agreement, an unusual item of damages necessitating specific proof, pleading, and notice. *Nat'l Liberty*, 120 F.3d at 914-15. By contrast, in this case, Plaintiffs have known for several years that Defendants were seeking to recover their attorneys' fees. On January 9, 2007, defense counsel sent plaintiffs' counsel a letter requesting Defendants be reimbursed their attorneys' fees under the Agreements' "prevailing party" provisions. Plaintiffs have been aware of these provisions since they initiated this lawsuit; the Complaint requests attorneys' fees under the same provision Defendants seek attorneys' fees.

**B. Defendants are entitled to recover reasonable attorneys' fees incurred in defending against Plaintiffs' contract and tort claims.**

Plaintiffs also argue the language of the fee-shifting provisions bars Defendants' request for attorneys' fees and expenses. They assert Defendants are not the "prevailing party" because they did not obtain a judgment on the merits, they prevailed on a motion for sanctions. Plaintiffs also argue the Court should deny the entire request because Defendants did not allege that Plaintiffs violated any contractual obligations. They contend Defendants may recover at most fees and expenses incurred in defending against the breach of contract claim.

Plaintiffs' arguments are without merit. To begin, Defendants are the prevailing parties. When a plaintiff's claims have been dismissed with prejudice as a discovery sanction, the

defendant is the prevailing party for purposes of awarding attorneys' fees and expenses. *Health Data Sciences Corp. v. Servian*, Nos. 94-56221, 95-55355, 1996 WL 103811, at *3 (9th Cir. Mar. 7, 1996) (unpublished opinion) (holding the defendant was the prevailing party under a contractual attorneys' fees provision when the plaintiff's claims were dismissed as a discovery sanction); *see Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001) (holding defendant was the prevailing party under Rule 54(d)(1) after the court dismissed plaintiff's lawsuit for discovery violations).

Plaintiffs' suggestion that the Court should not award Defendants the reasonable cost of defending against Plaintiffs' breach of contract claim is also meritless. The Agreements' fee-shifting provisions state that "[t]he prevailing party will be entitled to recover from the other party . . . reasonable . . . costs and other costs of collection the party incurs in order to secure, *defend or protect* the rights inuring to the prevailing party under the Agreement or to enforce the terms thereof" (Doc. 199-1 at 14; Doc. 199-2 at 14) (emphasis added). Count VIII alleges Defendants breached the Agreements. Defendants denied the allegations, defended themselves, and were the prevailing parties. Accordingly, Defendants are entitled to their reasonable fees and expenses incurred in defending against this claim.

Because Plaintiffs' tort claims required Defendants to defend their performance under the Agreements, Defendants are also entitled to recover the cost of defending against the tort claims. For example, the tortious breach of contract claim (Count IX) asserts Defendants failed to pay the amounts required under Paragraph 7(b) of the Agreements. To defend, Defendants sought to show they had paid the correct amounts. Similarly, Plaintiffs' fraud and negligence claims (Counts IV-VII) assert Defendants made certain representations which were false to induce Plaintiffs to sign the contracts. This required Defendants to defend the Agreements' merger

clauses wherein the Plaintiffs expressly disclaimed that they were entering the contracts in reliance on representations made outside of the Agreements. Since these claims required Defendants to defend their rights and performance under the Agreements, the cost of defending against the tort claims is reimbursable.

This holding is consistent with the decision reached in a similar case, *Pacific Fuel Co. v. Shell Oil Co.*, litigated by the same attorneys, concerning an identically worded fee-shifting provision. In that case, after the plaintiff prevailed at trial on its tort claims, Plaintiffs' Counsel argued that "[t]he attorney's fee provision . . . is unusual but it is broadly worded and supports, not precludes, an award of fees to Plaintiff on its tort claims." *Pac. Fuel Co. v. Shell Oil Co.*, No. 2:06-cv-0225-AG-AJW, Doc. 649 at 14 (C.D. Ca. filed Sept. 30, 2008). The trial court agreed. On appeal, Plaintiff's Counsel argued in his opening brief that "[t]he contractual fee provision also contemplated fee awards for tort claims because it contains an express reference to 'punitive' and 'exemplary' damages. Punitive and exemplary damages are not available for breach of contract claims." *Pac. Fuel Co. v. Shell Oil Co.*, No. 09-55640, Doc. 32 (9th Cir. filed Feb. 23, 2010). The Ninth Circuit affirmed, holding that the contract language covered both breach of contract and tort claims. This Court reaches the same conclusion,[2] holding the language of the fee-shifting provision encompasses the contract and tort claims.[3]

---

[2] The Court recognizes that the district court and court of appeals in *Pacific Fuel* based their decisions in part on the application of California law, which is not relevant here.

[3] Even if the tort claims are not covered by the Agreements, much of the cost of defending the tort claims was inextricably intertwined with the cost of defending the breach of contract claim and so recoverable under the attorneys' fees provisions. Under both Missouri and Kansas law, the prevailing party can recover fees that are not attributable to the defense of a particular claim if the fees are intertwined with work on a claim that is covered. *DeSpiegelaere v. Killion*, 947 P.2d 1039, 1042-43, 1046-47 (Kan. Ct. App. 1997) (adopting "intertwined fees" exception, recognizing that some fees cannot be segregated); *see Brockman v. Soltysiak*, 49 S.W.3d 740, 746 (Mo. Ct. App. 2001) (holding where the fees are indivisible the prevailing party does not need to allocate its attorneys' fees to each claim). After reviewing at length the detailed billing records Defendants submitted (Doc. 673, Ex. 8-C), the Court observes that approximately 75% of the requested fees and expenses are not attributable to the defense of any particular claim and are inextricably intertwined with the defense of the breach of contract claim.

## C. Defendants reasonable attorneys' fees and expenses total $3,103,110.34.

In determining a reasonable award of attorneys' fees under Missouri and Kansas law, a court must consider: (1) the time expended; (2) the nature, character and amount of services rendered; (3) the nature and importance of the litigation; (4) the degree of responsibility imposed on the attorney; (5) the amount of money involved; (6) the degree of professional ability, skill, and experience called for and used; and (7) the result obtained. *Compare Weitz*, 631 F.3d at 528-29, *with Hofer v. Unum Life Ins. Co. Of Am.*, 441 F.3d 872, 884-85 (10th Cir. 2006). In the present case, these factors indicate Defendants' request is reasonable.

With respect to the time expended, although Defense Counsel has billed an inordinate number of hours—11,553.8—the litigation has been on-going for more than eight years. During this period, Defense Counsel has billed Defendants on a regular basis from contemporaneously maintained timesheets identifying the work performed and the time expended, and Defendants have paid these bills in full. Large corporations such as Shell and Equilon are sophisticated consumers of legal services who carefully review their bills and dispute excessive fees and charges. Since Defendants timely paid the $2,340,819.44 in attorneys' fees they were billed, this suggests the fees are reasonable. The Court also notes that while Plaintiffs have argued generally that Defendants have failed to establish the reasonableness of the total time spent on this case, Plaintiffs have not objected to any particular billing entry.

The amount sought is also reasonable in light of the nature, character, and amount of services Defense Counsel rendered. The Court rejects the suggestion that the underlying litigation was not particularly complex. This was a complicated business dispute involving

---

Additionally, the Court notes Defendants are not seeking reimbursement for 4,300 hours of work worth approximately $777,000 spent defending the alleged statutory violations, the PMPA violation (Count I), and the Missouri Franchise Law violation (Count II), which are not covered by the Agreements' attorneys' fees provisions. This indicates Defendants are not using the "inextricably intertwined" exception to inflate their recovery.

parties in a sophisticated, competitive, heavily regulated industry, which Plaintiffs made more difficult by refusing to comply with the rules of discovery. The litigation was also important to both sides: It was a "bet the company" lawsuit for Plaintiffs; for Defendants it was one of several lawsuits relating to the same contractual provision in their MSO Agreements, a challenge to one of their channels of trade. This case also involved a significant amount of money. Plaintiffs initially sought $65 million for their claims; after portions of the case were dismissed, Plaintiffs still sought $28 million.

Because the case was complex and the stakes so high, the case imposed a high degree of responsibility on Defense Counsel. Defense Counsel had to produce thousands of documents and manage a considerable amount of electronic discovery; brief an inordinate number of discovery issues; make numerous court appearances; extensively research, brief, and argue several novel legal issues, such as a federal court's inherent authority to sanction; and investigate credible allegations that Plaintiffs attempted to bribe a witness. These activities called for a high degree of professional ability, skill, and experience.

Finally, the result obtained justifies the large bill. Defense Counsel ultimately convinced the Court that Plaintiffs' claims should be dismissed with prejudice. Defense Counsel demonstrated that Plaintiffs, through their principal Alan Barazi, intentionally failed to preserve evidence crucial to Defendants' ability to receive a fair trial, and that this spoliation irreparably prejudiced Defendants. They also persuaded the Court that Plaintiffs' bad faith conduct could not be cured by a lesser sanction than dismissal with prejudice. The resulting dismissal left their clients with no liability on Plaintiffs' claims.

Of course, both parties litigated this case with a concede nothing, contest everything attitude which dramatically increased their litigation costs. But it is well-established that where

one party, in this case the Plaintiffs, litigates tenaciously, they cannot complain about the time spent by the other party. *Hutchins ex rel. Hutchings v. Roling*, 193 S.W.3d 334, 353 (Mo. Ct. App. 2006). Accordingly, the Court holds Defendants request for $2,340,819.44 in attorneys' fees is reasonable.

As for the requested expenses, in their "Supplemental Suggestions in Support of Motion for Attorneys' Fees and Costs" (Doc. 673), Defendants state they incurred $762,290.90 in expenses which are not taxable under the Federal Rules of Civil Procedure or the Local Rules as court costs.[4] In support of their request, Defendants have submitted a detailed report of these expenses (Doc. 673, Exh. 8, Tab F). Approximately half ($349,576.94) of the request is for expenses related to the production of electronic discovery. The remainder is for telephone calls ($3,759.24), research (11,898.47), faxes ($2,014.50), photocopies ($195,434.09), travel expenses ($14,203.62), courier ($4,384.87), expert witnesses fees ($179,114.17), publications concerning the state of the convenience industry ($1,905.00), process server fees ($2,901.20), and mediation costs ($2,717.00). Although Plaintiffs oppose an award of costs generally, they have not raised any particular objection to any category of these costs.

The Court finds the requested expenses are reasonable. Accordingly, in addition to the $2,340,819.44 in attorneys' fees, Defendants are awarded $762,290.90 in expenses.

In light of this ruling, the Court denies as moot Defendants' request for an award of attorneys' fees pursuant to the Court's inherent authority.

## II. The Court declines to hold Barazi personally liable.

Finally, the Court declines to sanction Barazi under its inherent authority by entering an award of costs or attorneys' fees against Barazi personally. Assuming for the sake of argument

---

[4] Defendants have submitted a separate Bill of Costs (Doc. 660) seeking $90,125.67, most of which are court reporter fees, for expenses that are not taxable by rule or statute.

that the Court possessed the power to impose sanctions on a non-party appearing before it and that Barazi has been given the requisite procedural due process (notice and opportunity to be heard), the Court is not convinced that imposinNog sanctions on him is appropriate under the circumstances. The Court has cured the prejudice caused by Barazi's actions by dismissing Plaintiffs' claims with prejudice. Through its orders, the Court has already admonished Barazi, placing other courts and potential business partners on notice about his behavior. Additionally, since Barazi is the principal of both of the Plaintiff corporations, the Court has effectively sanctioned him personally. Granted, Barazi is responsible for Plaintiffs' intentional failure to preserve records which irreparably prejudiced Defendants' ability to receive a fair trial, *id.* at 441-43, and his testimony was not credible. *Id.* at 438. But the spoliation here was not sufficiently egregious to justify piercing the corporate veil and holding Barazi personally liable, and the Court did not find he committed perjury, an act that might justify such a sanction.

Finally, Defendants are not innocent victims. They bear some responsibility for the acrimony in this litigation leading up to the imposition of sanctions. As the Eighth Circuit observed, "Defendants appeared to have directed their efforts not toward effective discovery, but toward exaggeration of ancillary issues . . . and fanning the flames of the district court's discontent." *Sentis Group, Inc.*, 559 F.3d at 905. Imposing sanctions on Barazi personally would arguably reward their behavior, something the Court declines to do. Accordingly, this portion of Defendants' request is denied.

## Conclusion

For the reasons set forth above, the motion is GRANTED IN PART. The Court awards Defendants attorneys' fees of $2,340,819.44 and expenses of $762,290.90 for a total of $3,103,110.34, but the Court declines to hold Barazi personally liable for these amounts.

**IT IS SO ORDERED.**

DATE:  August 12, 2013                             /s/ Greg Kays                           
                                                   GREG KAYS, JUDGE
                                                   UNITED STATES DISTRICT COURT